**KIN–ARK CORPORATION, a Delaware Corporation, Plaintiff-Appellee,**

v.

**W. M. (Pat) BOYLES et al., Defendants-Appellants.**

No. 77–1457.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 17, 1978.

Decided March 1, 1979.

Rehearing Denied March 26, 1979.

Thomas R. Brett, Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, Okl., submitted on the brief for plaintiff-appellee.

Doerner, Stuart, Saunders, Daniel & Langenkamp, Stephanie K. Seymour, G. Michael Lewis, William H. Hinkle, Tulsa, Okl., submitted on the briefs for defendants-appellants.

Before SETH, Chief Judge, BREITENSTEIN, Circuit Judge and STANLEY, District Judge.*

BREITENSTEIN, Circuit Judge.

The appeal in this diversity case presents two issues: (1) whether a promissory note is usurious under Texas law, and (2) whether misrepresentations and omissions in a stock-for-assets transaction violated § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b(5). The district court, after a non-jury trial, held that the note was not usurious and that no securities violation occurred. We reverse on the usury issue and affirm on the securities issue.

Plaintiff-appellee Kin-Ark Corporation is a Delaware corporation with its principal place of business in Tulsa, Oklahoma. The defendants-appellants, all citizens of Texas, are stockholders of Boyles Galvanizing, Inc., a Texas corporation located in Hurst, Texas. On September 30, 1969, Kin-Ark and Boyles Galvanizing made a stock-for-assets transaction whereby common stock of Kin-Ark was transferred to defendants in exchange for all of the assets of Boyles Galvanizing, Inc. Kin-Ark created a wholly owned subsidiary, Boyles Galvanizing Co., a Delaware corporation (Boyles-Delaware) to receive the assets and be the successor operating company to Boyles-Texas.

Defendant W. M. (Pat) Boyles was at various times a member of the Board of Directors of Kin-Ark and the chief operating officer of Boyles-Delaware. As a result of transactions immaterial to this appeal, Pat Boyles became indebted to Boyles-Delaware. The indebtedness was reduced to a note dated November 14, 1972, in the amount of $66,497.46, signed by Pat Boyles, payable to Boyles-Delaware, and assigned by it to Kin-Ark. The note provided for interest payable quarterly at 1.25% above the prime rate set by the First National Bank of Chicago and for 10% on overdue amounts.

The Kin-Ark complaint alleges several claims but we are now concerned only with its claim for unpaid interest. Pat Boyles asserted in his answer that the note was usurious under Texas law and that he was entitled to recover usury penalties. We are also concerned with the counterclaim of all defendants that Kin-Ark breached the contract relating to the stock-for-assets transaction and committed securities fraud.

*1—Usury.*

The note is payable in Texas. The holding of the district court that Texas law governs is not contested. See also 15 Okl. Stat.Ann. § 162; and *Legg v. Midland Savings & Loan Co.*, 55 Okl. 137, 154 P. 682, 684.

Art. 5069–1.04, Vernon's Tex.Rev.Civ. Stat.Ann. provides:

"The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or

---

* Of the District of Kansas, sitting by designation.

indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle." See also Art. 5069–1.02 Vernon's Tex.Rev. Civ.Stat.Ann.

The penalties referred to are provided in Art. 5069–1.06(1):

"Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

The Boyles note provides for interest 1.25% above the prime rate. At the time of execution the interest was less than 10%. Subsequent increases in the prime rate caused the note rate to exceed 10% for a substantial period, and in the aggregate over the entire term of the note. Kin-Ark sent Boyles quarterly interest billings which contained a per diem itemization of the interest charged in accordance with the fluctuations of the prime rate. Billings for the quarter ending August 31, 1973, through the quarter ending May 31, 1975, claimed interest ranging from 10.25% to 13.25%. Upon receipt of the August 31, 1973, billing Boyles refused to pay further interest. The principal sum of the note, with interest at 10% from November 14, 1975, the principal due date, was paid by Boyles.

The trial court held that the note was not usurious on its face or in violation of the Texas statutes, and that Kin-Ark was entitled to recover interest at the 10% rate. The court gave Kin-Ark a judgment against Pat Boyles in the amount of $27,771.81 on account of unpaid interest.

■ Texas has held that the proscriptions in § 5069–1.06(1) against contracting for, charging or receiving interest greater than that authorized must be read in the disjunctive and the occurrence of any one triggers the usury penalties. See *Windhorst v. Adcock Pipe and Supply*, Tex., 547 S.W.2d 260,

261, a case in which a retailer charged, but the customer did not pay, 1.5% per month interest on an open account.

■ The note is not usurious on its face. At the time of execution the prime rate was 7%. The rise in the prime rate which eventually brought the note rate to 13.25% was caused by economic forces over which neither party had any control. Kin-Ark, and the trial court, place heavy emphasis on *Dorfman v. Smith*, Tex.Civ.App., 517 S.W.2d 562, 566, and cases there cited. That case recognizes that usury does not occur unless the dominant purpose, in the light of the attending circumstances, clearly shows an intent to exact more interest than the Texas law permits.

■ The conduct of Kin-Ark shows this intent. When the prime rate rose so that the note rate exceeded the legal rate, Kin-Ark billed Boyles at illegal rates up to 13.25% and attempted to collect. Plaintiff's Ex. 11 refers to the interest due under Oklahoma law and contains a statement showing interest charges at 1.25 over prime and ranging from .1005 to .1300 for the period March 7, 1974 to May 11, 1974. The note was payable in Texas and is governed by the law of that State. In Texas, ignorance of the law is no defense when the intent to make the bargain is clear. *Townsend v. Adler*, Tex.Civ.App., 510 S.W.2d 175, 176.

■ Under Texas law the intent in usury cases is not the subjective intent to charge a usurious rate but rather the intent to make the bargain under scrutiny. See *Miller v. First State Bank*, Tex.Civ.App., 551 S.W.2d 89, 98, aff'd and modified, Tex., 563 S.W.2d 572. There is no evidence that Kin-Ark did not intend to make the bargain embodied in the note. Indeed, when the opportunity was presented, Kin-Ark consistently demanded interest in excess of 10%.

■ We recognize the cases holding that a contract is not usurious when it contains a savings clause forbidding the collection of interest in excess of the legal maximum. See *American Century Mortgage Investors*

*v. Regional Center, Ltd.*, Tex.Civ.App., 529 S.W.2d 578, 584, and *Imperial Corp. of America v. Frenchman's Creek Corp.*, 5 Cir., 453 F.2d 1338, 1344–1345. The note before us does not contain a savings clause, and gives the payee the right to claim interest in excess of the legal rate. Under Texas law, it is usurious. See *W. E. Grace Mfg. Co. v. Levin*, Tex., 506 S.W.2d 580, 584, and *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282, 283–284.

■ We attribute no significance to the fact that the note provided for 10% interest on overdue amounts. Nothing in the record indicates why this rate for overdue amounts was chosen. The contention that it was chosen with a view toward usury statutes is entirely conjectural. The fact is that Kin-Ark billed Boyles for, and tried to collect from him, interest at more than the legal rate.

■ The trial court reasoned that because the excess interest resulted from uncontrollable economic factors the "accidental and bona fide error" provision of § 5069–1.06(1) applies to defeat the claim of usury. Although Kin-Ark could not control the rate, it took advantage of the increase in that rate and charged Boyles for interest at a rate beyond the statutory maximum. Whatever the subjective intent of Kin-Ark may have been, its actions in charging the excess interest and its reliance on the note as made show an intent to violate the Texas usury statute. We find nothing in the record to show that the bargain reflected by the note was an accident or a good faith error. Texas has said that money lenders are presumed to recognize usury and are on notice that it is illegal. *Miller v. First State Bank*, Tex.Civ.App., 551 S.W.2d 89, 98, aff'd and modified, Tex., 563 S.W.2d 572; see also *Johns v. Jaeb*, Tex.Civ.App., 518 S.W.2d 857, 860–861.

■ Kin-Ark both contracted for and charged usurious interest. Section 5069–1.06(1) provides a penalty of "twice the amount of the interest contracted for, charged or received, and reasonable attorney fees fixed by the court." Boyles is entitled to the statutory penalty but not to a return of interest paid. *First State Bank v. Miller*, Tex., 563 S.W.2d 572, 576–577. Kin-Ark is not entitled to recover unpaid interest. *Wall v. East Texas Teachers Credit Union*, Tex., 533 S.W.2d 918, 921. The record shows that the total interest contracted for, charged or received by Kin-Ark was $20,354.95. Boyles is entitled to a penalty in the amount of $40,709.90 plus a reasonable attorney fee to be fixed by the district court on remand.

*2—Securities Fraud.*

Before the summer of 1969, Kin-Ark was primarily engaged in leasing, exploring, and developing oil and gas properties. As part of a diversification program, Kin-Ark entered into a stock-for-assets transaction with Boyles-Texas, which was in the business of galvanizing metal. Kin-Ark created a wholly owned subsidiary, Boyles-Delaware, to continue the business of Boyles-Texas.

The acquisition was closed on September 30, 1969, with Kin-Ark acquiring all the assets of Boyles-Texas in exchange for 538,-000 shares of unregistered Kin-Ark stock, of which 497,566 shares were issued to the defendants. The transaction was a purchase and sale of securities within the meaning of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and of Rule 10b–5 of the Securities Exchange Commission, 17 C.F.R. § 240.10b(5). *SEC v. National Securities, Inc.*, 393 U.S. 453, 467–468, 89 S.Ct. 564, 21 L.Ed.2d 668, and *Swanson v. American Consumer Industries, Inc.*, 7 Cir., 415 F.2d 1326, 1330.

A registration statement for a public rights offering by Kin-Ark had become effective on July 22, 1969. On September 12, 1969, the prospectus was amended and stickered, primarily to show the acquisition of Boyles-Texas. The prospectus was the prime source of information for the defendants' evaluation of Kin-Ark stock.

The defendants' counterclaim alleges (1) violation of § 10(b) and Rule 10b–5 by the misrepresentation and omission of material facts in the prospectus, and (2) breach of a

contract warranty requiring disclosure of all material information. Disposition of the 10b–5 claim controls the warranty claim. The district court held: "plaintiff [Kin-Ark] made no misrepresentations of material facts and * * * disclosed to the defendants all material facts relative to the plaintiff at the time of the stock transaction." On the appeal defendants charge (1) omission of management interest in corporate investments, (2) manipulation of the public rights offering, and (3) misrepresentation of the financial condition of two real estate ventures. These will be discussed in the order in which they are stated.

Defendants say that the interest of Kin-Ark officers and directors in two corporate investments should have been disclosed. The first relates to Kin-Ark's purchase of about 10% interest in Antipodes Exploration, Ltd., a mining company in which two Kin-Ark officers and directors owned 13.5% of the outstanding stock. Kin-Ark's investment in Antipodes was disclosed in the prospectus without any statement of management interest. When made, the Antipodes investment accounted for $39,603, or less than 0.72%, of Kin-Ark's total investments of $5,564,845.

The second relates to Kin-Ark's joint venture with T.L.M., Inc., whose principal assets were oil and gas leases. Approximately 12.5% of the T.L.M. stock was held by Kin-Ark directors. In 1965 Kin-Ark acquired a one half interest in certain oil and gas leases from T.L.M. Each company was responsible for one half of the delay rentals on undeveloped leases. T.L.M. did not pay its share and Kin-Ark paid 100% of the delay rentals. When the prospectus was prepared T.L.M. owed Kin-Ark $7,631.63. This amount was later recovered by Kin-Ark with interest. The value of Kin-Ark's lease interests was disclosed in the prospectus but the interest of management was not. At no time did Kin-Ark hold any T.L.M. stock. In July, 1969, the value of the Kin-Ark interest was $44,370, less than 0.42%, of Kin-Ark's investments which totalled $10,653,773.

Defendants say that the non-disclosures were material because taken in connection with disclosures made in the prospectus, they would have shaken a potential investor's confidence in management's devotion to the interests of its shareholders. When a claimed Rule 10b–5 violation is based on failure to disclose, the materiality of the omitted fact must be demonstrated. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741, and it is necessary to show that "a reasonable investor might have considered them [the omitted facts] important in the making of [his] decision." In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757, the Court said that "the general standard of materiality" contemplates that:

> "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

See also *Hassig v. Pearson*, 10 Cir., 565 F.2d 644, 649–650.

The de minimis nature of the omissions is such that a reasonable man, on objective contemplation, would attach no significance to them in the light of the totality of Kin-Ark's activities. See *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 2 Cir., 401 F.2d 833, 849. The totality of facts shown by the record rebuts the contentions of the defendants. See *Kohler v. Kohler Co.*, 7 Cir., 319 F.2d 634, 641. Defendants' reliance on *Mills v. Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 is misplaced. That case was concerned with a merger in which a proxy statement failed to disclose that the acquired company's directors were nominees of, and controlled by, the acquiring company, a conflict of much greater magnitude than those presented here.

The next Rule 10b–5 claim relates to the alleged manipulation of the public rights offering of Kin-Ark stock. The closing of the stock-for-assets transaction required Kin-Ark to sell a specified number of shares

in its offering and from the proceeds furnish Boyles-Delaware with $500,000 in working capital. To complete the stock issue and sale successfully Kin-Ark did two things. First, Kin-Ark persuaded holders of some of its long-term debt to accept early payment and use the proceeds to purchase offered stock. Second, it redeemed convertible debentures amounting to one million dollars at a discounted price of approximately $750,000, and the debenture holders purchased the same number of shares at the public offering price that they would have been able to purchase had they converted on maturity at the debenture rate. The net effect was to retire a sizeable debt at a substantial saving, to cut off interest on the debt, and to conclude successfully the public offering.

The closing of the stock-for-assets transaction was contingent on the sale by September 5 of 470,588 shares in the public offering. The closing agreement signed by all parties, including the defendants, recites that the requirement was met. Appellants have no grounds to complain that their expectations were not fully satisfied.

■ The inducement of the debenture holders to accept early redemption in exchange for the opportunity to acquire registered stock was not a material alteration in the method of distributing the shares. This is not a case like *A. J. White & Co. v. SEC*, 1 Cir., 556 F.2d 619, where there was a material alteration in the method of distribution and a failure to disclose that alteration. Id. at 622. In the instant case there was a bona fide sale of the required minimum. The redemption extinguished a legitimate corporate debt. The actions of Kin-Ark were the exercise of sound business judgment. See *Financial Industrial Fund, Inc. v. McDonnell Douglas Corp.*, 10 Cir., 474 F.2d 514, 518, cert. denied 414 U.S. 874, 94 S.Ct. 155, 38 L.Ed.2d 114.

Defendants' final Rule 10b–5 claim is that Kin-Ark misrepresented the financial condition of two real estate acquisitions, University Club Towers Apartments and Mansion House Apartments. Before the acquisition of the apartments, Kin-Ark retained a real estate analyst to make an operating analysis. He concluded that the properties were not a good investment. Kin-Ark did not disclose his analysis or opinion in the prospectus. The materiality of this omission must be compared against the facts which the prospectus disclosed.

The prospectus, plaintiffs' Ex. 26, on pp. 22–26, describes in detail the situation with regard to University Club Towers, and on pp. 26–28 contains a similar description of Mansion House. The bleak and discouraging account would not encourage any reasonable investor to have faith in the desirability of these investments of Kin-Ark. No good purpose would be served by a detailed account of the financial difficulties of the two projects. The operating losses were substantial. The independent public accountant who reported on the Kin-Ark balance sheets qualified his opinion because of the two apartments. See prospectus pp. 43 and 48.

■ When considered against this background, the operating analysis made over two years before the prospectus has little significance. The net contribution of the analysis would not have significantly altered the total mix of the information made available. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 452–453, 96 S.Ct. 2126, 48 L.Ed.2d 757, and *Hassig v. Pearson*, 10 Cir., 565 F.2d 644, 649–650.

Defendants emphasize Kin-Ark's actions in tendering the apartments to the mortgagees and writing off the investment less than nine months after the closing of the stock-for-assets transactions. The facts disclosed in the prospectus revealed that a write-off might be necessary. We must look to the material facts as they existed at the time of closing. *Financial Industrial Fund, Inc. v. McDonnell Douglas Corp.*, 10 Cir., 474 F.2d 514, 518. These facts were fully disclosed.

The judgment is reversed insofar as it allows Kin-Ark $27,771.81 unpaid interest on its First Cause of Action and denies Boyles usury penalties and attorney fees. Otherwise the judgment is affirmed. The

case is remanded to the district court for further proceedings in the light of this opinion. Each party shall bear its or his own costs.