755 P.2d 67

David Lee MAULSBY,
Plaintiff–Appellee,

v.

Chase V. MAGNUSON and Mary F. Magnuson, Defendants–Appellants,

v.

H. Griffin PICKARD, Jr., Carolyn J. Pickard, A. Lee Straughan and Rosemary Straughan, Third–Party Defendants.

No. 16834.

Supreme Court of New Mexico.

June 3, 1988.

Fairfield, Farrow, Hunt, Reecer & Strotz, P.C., John E. Farrow, Albuquerque, for defendants-appellants.

Calvin Hyer, Jr., Albuquerque, for plaintiff-appellee.

## OPINION

STOWERS, Justice.

### SYNOPSIS

David Lee Maulsby, plaintiff-appellee, filed a complaint against Chase V. and Mary F. Magnuson, defendants-appellants, to recover a one-third share of money due on a promissory note signed by the Magnusons, A. Lee and Rosemarie Straughan and H. Griffin and Carolyn J. Pickard, Jr. The Magnusons answered raising several affirmative defenses and denied obligation under the note. Both parties motioned for summary judgment. The trial court granted Maulsby's motion and the Magnusons now appeal that decision. We affirm.

### FACTS

On October 4, 1978, three couples, the Magnusons, Straughans and Pickards, signed a secured promissory note payable to Maulsby in exchange for a loan of $45,000. The loan was obtained to fund improvements in Ladera Heights, an area being developed by Pickard Development Corporation (Corporation), and the money was used for that purpose.

Under the terms of the note, the couples were to pay Maulsby $45,000 plus thirteen percent interest per year from the date of the note until full payment. Although the

couples signed individually, the parties intended that the Corporation be the primary obligor on the note and that it repay Maulsby out of proceeds from lot sales in Ladera Heights.

The interest rate of thirteen percent was not set by Maulsby. It was set by either Magnuson, then President of the Corporation, or Pickard, a corporate director. Maulsby merely agreed to that rate. At the time the note was signed, the maximum legal interest rate was ten percent for secured debts. NMSA 1978, § 56–8–11 (Orig. Pamp.1978), *repealed* Laws 1981, ch. 263, § 4.

The note was originally secured by a quitclaim deed to lots 35–49 of Ladera Heights, subject to a first mortgage to Banker's Union Life Insurance Company, a real estate contract between College Park Limited Partnership and the Pickards, recorded easements and taxes for 1971 and subsequent years. The deed was to be held in escrow until full payment or default by the signatories. Upon full payment or default, the deed would be returned to the signatories or sent to Maulsby, respectively.

On November 21, 1978, Maulsby released the lots named as security in the deed and accepted a new quitclaim deed substituting lots 50–62 and 92–93 as security. The new lots were subject to the same restrictions above, with taxes for 1981 and subsequent years. There is some question whether the second deed amply secured the note; however, this is not material to the issues presented as the note was initially secured for purposes of NMSA 1978, § 56–8–11 (Orig.Pamp.1978).

The note specified that Maulsby was to be paid eighteen months after the loan date: October 4, 1978. The note came due on April 4, 1980. No payments were made on that date. Maulsby demanded full payment from all signatories on the note and delivery of the quitclaim deed held in escrow, until he received full payment.

On August 1, 1983, both the Straughans and the Pickards signed separate promissory notes to Maulsby indicative of their intent to pay their respective one-third shares

of the original note. Each note was in the amount of $25,000 plus twelve percent interest per year, payable interest only semi-annually, to be paid in full on August 1, 1986. Each note contained the following phrase:

This note replaces $25,000 worth of the debt owed on original debt of October 4, 1978, between Pickard, Straughan, Magnuson, Maulsby and is to apply toward [Straughan's or Pickard's] part of this note.

The Magnusons did not sign a subsequent note to Maulsby, nor did they make any payments on the original note.

On September 28, 1984, Maulsby filed a complaint against the Magnusons to recover their one-third share of the original note, $26,700; representing $15,000 plus thirteen percent interest due from the loan date. The Magnusons denied owing on the note and raised several affirmative defenses in their answer, including allegations that the note was facially usurious and that the subsequent notes signed by the Straughans and Pickards, totalling $50,000 ($5,000 in excess of the loan amount), constituted a novation relieving the Magnusons' obligation on the note.

Both parties moved for summary judgment. The Magnusons' motion rested chiefly on the allegations stated above. Maulsby asserted that no genuine factual dispute existed since the note was not usurious, there was no novation and the note was a corporate obligation, making usury an unavailable defense.

On October 23, 1986, the trial court granted Maulsby's motion for summary judgment and denied the Magnusons' motion. That court found: 1) the note was not usurious, although the parties were limited to the legal interest rate; 2) the subsequent notes did not constitute a novation, thus the Magnusons were still obligated for one-third of the note ($15,000 plus ten percent interest from the loan date until full payment); and 3) the note was the Corporation's obligation.

The Magnusons now appeal the trial court's decision granting Maulsby's motion

for summary judgment raising two issues: 1) whether the district court erred in allowing recovery of interest on a facially usurious note; and 2) whether the court erred in finding that the subsequent notes signed by the Straughans and Pickards did not constitute a novation discharging the Magnusons' obligation.

ISSUES

I

We first address whether the district court erred as a matter of law in allowing Maulsby to recover interest on a facially usurious note. At the time the note was executed, the maximum legal interest rate was ten percent for secured debts. NMSA 1978, § 56–8–11 (Orig.Pamp.1978). The Magnusons reason that since the note's interest rate of thirteen percent exceeded the legal limit, it was facially usurious and Maulsby should be subject to the statutory penalty. The penalty for usury was as follows:

> The taking, receiving, reserving or charging of a rate of interest greater than allowed by this act [56–8–9, 56–8–11 to 56–8–14 NMSA 1978], *when knowingly done,* shall be deemed a forfeiture of the entire amount of such interest which the note, bill or other evidence of debt carries with it or which has been agreed to be paid thereon. [Emphasis added.]

NMSA 1978, § 56–8–13 (Orig.Pamp.1978).

The key element in this case is whether the parties *knowingly* took, received, reserved or charged a usurious interest rate. This court interpreted the term "knowingly done" in *Hays v. Hudson,* 85 N.M. 512, 513, 514 P.2d 31, 32 (1973), which the Magnusons rely on to support their position. In *Hays* we adopted the following rule:

> [S]ince the conscious and voluntary taking of more than the legal rate of interest constitutes usury, the only intent necessary on the part of the lender is to take the amount of interest which he receives, and if that amount is more than the law allows the offense is complete, no specific intent being necessary. [Emphasis omitted.]

*Id.,* 85 N.M. at 513, 514 P.2d at 32 (quoting Annotation, *Usury and Profit Sharing,* A.L.R.3d 475, 481 (1967)). This definition of usury suggests that no intent to violate the law is necessary.

The *Hays* interpretation of "knowingly done" is fairly recent in New Mexico's history. Since 1907, this court had held that usury required some conscious intent to violate the law by charging or exacting interest above the legal rate. *See Priestley v. Law,* 33 N.M. 176, 262 P. 931 (1927); *American Inv. Co. v. Lyons,* 29 N.M. 1, 218 P. 183 (1923); *Armijo v. Henry,* 14 N.M. 181, 89 P. 305 (1907), *all overruled, Hays v. Hudson,* 85 N.M. 512, 513, 514 P.2d 31, 32 (1973).

This original rule coincides with the general rule regarding usury which reads: "It is the general rule, applicable to both civil and criminal usury, that to constitute usury there must exist an *intent that the lender is to take more than the legal rate of interest for the sum loaned.*" [Emphasis added.] 45 Am.Jur.2d *Interest and Usury* § 160 (1969). *See also Call v. Palmer,* 116 U.S. 98, 6 S.Ct. 301, 29 L.Ed. 559 (1885). The general rule is also favored by the Tenth Circuit Court of Appeals. *See Kin–Ark Corp. v. Boyles,* 593 F.2d 361 (1979). The court in *Kin–Ark Corp.,* stated that usury requires that "the dominant purpose, in light of the attending circumstances, clearly shows an intent to exact more interest than the Texas law permits." *Id.,* 593 F.2d at 364. Other jurisdictions have also adopted the "specific intent" rule. For example, the court in *Sumner v. Investment Mortgage Co.,* 332 So.2d 103, 105 (Fla.Dist. Ct.App.1976) stated:

> Usury is a matter of intent. It is *not* determined by the fact that the lender receives more than the law permits. *It is determined by the existence of a corrupt purpose in the lender's mind to get more than the legal rate of interest* * * *. Intent is gathered from the circumstances surrounding the entire transaction * * *. The difference between a lawful transaction and a usurious one is the difference between good faith and bad faith * * *. To *willfully* do something, it must proceed from a *conscious*

motion of the will *intending the result which comes to pass*. [Emphasis added.] [Citations omitted.]

■ Usury laws generally are meant to protect the needy from paying exhorbitant interest rates or suffering other exploitation due to unsavory lending practices. Long, *Trends in Usury Legislation—Current Interest Overdue*, 34 U.Miami L.Rev. 325, 330 (1980). *See also National Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 259 (2d Cir.1977). In this case, all parties to the transaction were experienced in business, worked well together, and reunited to finance development of Ladera Heights based on their prior successes. None of these parties could be labelled "needy." The lender *did not* set the interest rate; the Corporation, represented by Magnuson or Pickard, suggested it. Further, the record indicates that *none* of the parties intended a usurious interest rate.

Upon further review and in retrospect, the *Hays* interpretation of "knowingly done" is overbroad and encompasses situations not contemplated by the statute. It also fails to comport with the general rule and ignores the clear wording and intent of Section 56–8–13. Here, applying the *Hays* view would allow the Magnusons to avoid their obligation to Maulsby by setting a usurious interest rate. This type of situation is not what the statute seeks to prevent. Given the statute's purpose and its wording, some usurious intent to exploit should be shown. We overrule *Hays* to the extent it is contrary to this opinion and adopt our prior interpretation of "knowingly done." *See Priestly v. Law*, 33 N.M. 176, 262 P. 931 (1927); *American Inv. Co. v. Lyons*, 29 N.M. 1, 218 P. 183 (1923); and *Armijo v. Henry*, 14 N.M. 181, 89 P. 305 (1907). The trial court correctly found that the note was not usurious and that the parties were limited to the legal interest rate.

## II

■ The second issue we address is whether the subsequent notes executed by the Straughans and Pickards constituted a novation. Both parties correctly point out the elements of a novation:

1) an existing and valid contract;

2) an agreement to the new contract by all the parties;

3) a new valid contract; and

4) an extinguishment of the old contract by the new one.

*Sims v. Craig*, 96 N.M. 33, 35, 627 P.2d 875, 877 (1981).

In this case, the second element is absent. First, it is undisputed that the Magnusons did not sign a subsequent note to Maulsby, nor were they involved in such notes signed by the Straughans and Pickards. Second, the evidence shows that the Straughans and Pickards signed subsequent notes to Maulsby to assure him of their intent to pay the original note. In other words, they intended to secure an old contract rather than create a new one. Therefore, the trial court correctly found there was no novation of the original note or the Magnusons' obligation to Maulsby because there was not an agreement to the new contract by *all* the parties.

## CONCLUSION

We find that the trial court did not err in granting Maulsby's motion for summary judgment or in ruling that the note was neither usurious nor extinguished by novation.

The judgment of the district court is affirmed. Both parties will bear their own costs and attorneys fees.

IT IS SO ORDERED.

RANSOM, J., and GARCIA, J., Court of Appeals, concur.