**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-045**

**Filing Date: March 21, 2012**

**Docket No. 31,311**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH and FAMILIES**
**DEPARTMENT,**

     **Petitioner-Appellee,**

**v.**

**STEVE C.,**

     **Respondent-Appellant,**

**and**

**JULIA A.,**

     **Respondent,**

**IN THE MATTER OF ALEXIS C. and**
**MICHAEL C.,**

     **Children.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Oneida L'Esperance, Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

1

Michael J. Doyle
Los Lunas, NM

Guardian ad Litem

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**     Father appeals from an adjudication of abuse of his two children pursuant to NMSA 1978, Section 32A-4-2(B)(1) (2009).  Father claims that hearsay evidence was improperly admitted and that the district court erred in allowing an amendment to the petition at the end of the adjudicatory hearing to include the claim of abuse.  We hold that the amendment to the pleading was improper, and we reverse the adjudication of abuse on that ground.

**BACKGROUND**

**{2}**     In December 2010, the Children, Youth and Families Department (CYFD) filed a petition against Father and Mother alleging neglect and abandonment of their children Alexis and Michael (Children).  *See* § 32A-4-2(E)(1) (defining a neglected child as one "who has been abandoned by the child's parent);  § 32A-4-2(E)(2) (defining a neglected child as one who is "without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent . . . or [the] refusal of the parent . . . when able to do so, to provide them").  The adjudicatory hearing for Father was held on April 14-15, 2011; Mother was not part of this hearing and is not a party to this appeal.

**{3}**     We provide a short summary of the facts presented at the hearing in order to give context to this appeal.  Mother abandoned Children as toddlers, after which they were raised for the most part by their maternal grandmother (Grandmother).  At first, Father would drop Children off with Grandmother and leave them for a week or two at a time.  Eventually, he left Children with Grandmother as the primary caregiver until late 2009.  During that time, Children would occasionally live with Father for a few months at a time, such as when Alexis was of kindergarten age; when Michael was in fourth, fifth, or sixth grade; and in the summer of 2010.  Grandmother said Father was often hard to find and that her contact with him was limited to the times she needed his signature to give her power of attorney in order to care for the Children, which Father provided several times over the years.  When Michael was twelve years old, Father lived nearby, and on about four occasions Michael would go over to Father's house for short visits.  Grandmother testified that generally Father did not visit on holidays nor did he show an interest in Children's education or extracurricular activities.  Father provided no financial support to Grandmother but allowed her to deduct Children as dependents on her tax return.  Father explained that at one point he had paid for psychotherapy sessions for Michael and interacted with the therapist, but except for that, Father left it to others to provide for Children's medical care.  Father testified that the

2

therapist told him that Michael had seen bad things when the boy had been with Mother. Several witnesses testified that Mother used drugs and that she associated with and exposed Children to others who used drugs.

{4}     In December 2009, Mother returned to Children's lives and brought them to live with her boyfriend, Gustavo, in Santa Fe. When Mother abandoned Children a second time in February 2010, Gustavo continued to take care of Children. Children had an overnight visit with Father in May or June 2010, and when Gustavo picked them up, he noticed that Michael seemed lethargic and glassy-eyed. When Gustavo inquired about the boy's demeanor, Michael became insolent and stated that Father had allowed him to smoke marijuana. Gustavo testified that in July 2010 Mother took Children, and Gustavo later had to rescue Michael from nearby Grandmother's home after Michael called Gustavo explaining that "there was a guy who was beating him up" and "a pound of meth on the table." Father continued to allow Children to live with Gustavo during 2010, but Father provided no financial or medical support despite Gustavo's attempts to contact Father for this assistance. Father asserted his parental rights when he found out that Children had been taken into custody by CYFD in December 2010. Gustavo told CYFD that he had trouble providing medical care for Children and called police to help resolve the custody issue. Grandmother offered to seek custody of Children, but Children resisted staying there because of others in the home who were alleged to drink and take drugs.

{5}     At the end of the hearing—after all of the evidence had been presented—CYFD asserted in its closing argument that there was sufficient evidence presented at the hearing to support a finding of abuse. The court considered this as a motion to conform to the evidence pursuant to Rule 1-015(B) NMRA and granted the motion. The court then found clear and convincing evidence that Father had neglected and abused Children, but insufficient evidence that Father had abandoned Children. This appeal followed.

## DISCUSSION

**Preliminary Issues**

{6}     We have two preliminary issues. First, we note that Father is not challenging the adjudication of neglect against him under Section 32A-4-2(E)(2). Thus, we do not review the adjudication of neglect by Father as determined by the district court. *Durham v. Guest*, 2007-NMCA-144, ¶ 9, 142 N.M. 817, 171 P.3d 756 (stating that issues not argued on appeal will not be reviewed on appeal), *overruled on other grounds by* 2009-NMSC-007, 145 N.M. 694, 204 P.3d 19. Accordingly, the district court had a basis on which to make a disposition of the case. NMSA 1978, § 32A-4-22(B) (2005).

{7}     Secondly, Father argues that the district court erred in admitting and relying on hearsay statements by Children and by Mother to conclude that Father abused Children. Because we reverse the portion of the adjudication based on abuse, we need not address this evidentiary question.

3

**Amendment of the Petition After the Close of Evidence**

**{8}**     We now turn to the question of whether the district court erred in allowing the amendment of the petition after closing statements.  As a general matter, "Amendments are within the [district] court's discretion and will be reversed on appeal only for abuse of discretion." *Bellet v. Grynberg*, 114 N.M. 690, 692, 845 P.2d 784, 786 (1992) (internal quotation marks and citation omitted).  Because resolution of this matter involves the interpretation and application of rules and a statute, our review is de novo. *In re Daniel H.*, 2003-NMCA-063, ¶ 8, 133 N.M. 630, 68 P.3d 176.  The review of issues dealing with the denial of Father's rights to procedural due process is also a question of law that we review de novo. *See State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 22, 126 N.M. 670, 974 P.2d 164.

**{9}**     After closing arguments, the district court addressed the amendment question as follows:

> Rule 10-101 [NMRA] does bootstrap, essentially, the Rules of Civil Procedure, so we look to [Rule 1-015] for guidance on the issue of whether the pleadings should be amended to conform to the evidence.  I just want to lay out my thinking on this in the event there is a need to have a court review this.  What we see is Rule 1-015(B), amendments to conform to the evidence. [reading:]  "When issues not raised by the pleadings" —and specifically we're talking about the allegation of abuse—"are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Rule 10-101 is found in the Children's Court Rules, while Rule 1-015 is part of the Rules of Civil Procedure for the District Courts.  CYFD concedes that "[a]djudications of abuse and neglect are governed by the Children's Code and the Children's Court Rules and not the Rules of Civil Procedure[,]" and therefore the district court incorrectly applied Rule 1-015.  We agree.  Rule 10-101(A) directs:

> Except as specifically provided by these rules, the following rules of procedure shall govern proceedings under the Children's Code [NMSA 1978, § 32A-1-1 (1995)]:
>
>     (1)     the Children's Court Rules govern procedure in the children's courts of New Mexico in all matters involving children alleged by the state:
>
>         . . .
>
>             (c)     to be abused or neglected as defined in the Abuse and Neglect Act[.]

4

The Children's Code sets forth the procedure to be used when petitions are amended:

> When it appears from the facts during the course of any proceeding under the Children's Code that some finding or remedy other than or in addition to those indicated by the petition or motion are appropriate, the court may, either on motion by the children's court attorney or that of counsel for the child, amend the petition or motion *and proceed to hear and determine the additional or other issues, findings or remedies* as though originally properly sought.

NMSA 1978, § 32A-1-18(A) (1995) (emphasis added).

**{10}** Along these lines, CYFD acknowledges that Section 32A-1-18 does not contain language allowing an amendment when issues not raised by the pleadings are tried by the express or implied consent of the parties. Relying on *State v. Franks*, 119 N.M. 174, 889 P.2d 209 (Ct. App. 1994), and *State v. Salgado*, 112 N.M. 793, 819 P.2d 1351 (Ct. App. 1991), CYFD argues that the district court ruling should be affirmed under the "right for any reason" doctrine. *Franks*, 119 N.M. at 177, 889 P.2d at 212 (allowing affirmance when a district court ruling is correctly based "on a ground not relied upon by the district court" but not "if reliance on the new ground would be unfair to the appellant"); *Salgado*, 112 N.M. at 796, 819 P.2d at 1354 (same). According to CYFD, allowing the amendment under Rule 1-015 would be consistent with the primary purpose of the Children's Code to "provide for the care, protection[,] and wholesome mental and physical development of children coming within the provisions of the Children's Code" as set forth in NMSA 1978, Section 32A-1-3(A) (2009). We disagree.

**{11}** We begin by looking at the plain language of the statute. *In re Jade G.*, 2001-NMCA-058, ¶ 16, 130 N.M. 687, 30 P.3d 376 ("In pursuing this question of construction of the Children's Code, we look initially to the plain language of the Code to ascertain legislative intent."). Section 32A-1-18(A) refers to facts presented that would support "some finding or remedy other than or in addition to those indicated by the petition or motion" and then directs that the district court may "amend the petition or motion and proceed to hear and determine the additional or other issues, findings[,] or remedies as though originally properly sought." Father was put on notice regarding claims of neglect and abandonment, but he first learned of the abuse claim during CYFD's closing argument at the end of the proceedings. Once the district court grants a motion to amend, Section 32A-1-18(A) requires the court to "proceed to hear and determine the additional or other issues, findings[,] or remedies," which in this case pertain to the new allegation of abuse. Here, the district court granted the motion to amend the petition, immediately made its ruling, and did not "proceed to hear" the additional issue. We note that proof of abuse requires elements that are different from those elements required to prove neglect. An abused child is defined as one "who has suffered or who is at risk of suffering serious harm because of the action or inaction of the child's parent[.]" Section 32A-4-2(B)(1). A neglected child is one "who is without proper parental care and control or subsistence, education, medical[,] or other care . . . because of the faults

or habits of the child's parent[.]" Section 32A-4-2(E)(2). Throughout the proceedings, Father was defending against allegations of neglect and abandonment, not abuse. Once the petition was amended, Father was not given the opportunity to defend against the new charge of abuse. We conclude that the court erred by relying on Rule 1-015 and by not following the requirements of Section 32A-1-18.

{12} Our interpretation of Section 32A-1-18 is consistent with the guarantees of due process. "[N]eglect and abuse proceedings must . . . be conducted in a manner that affords the parents constitutional due process." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 11, 139 N.M. 459, 134 P.3d 746. "Process is due when a proceeding could affect or interfere with the relationship between a parent and a child." *State ex rel. Children, Youth & Families Dep't v. Browind C.*, 2007-NMCA-023, ¶ 20, 141 N.M. 166, 152 P.3d 153. Even though the early stages of neglect and abuse proceedings do not involve the termination of parental rights, that due process requirement "begins with the filing of a petition for neglect and abuse." *Pamela A.G.*, 2006-NMSC-019, ¶ 11 (internal quotation marks and citation omitted).

{13} Due process requires "timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; [and] a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation[.]" *Id.* ¶ 12 (internal quotation marks and citation omitted). To evaluate the process owed to a parent in abuse and neglect proceedings, we utilize the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 19, 133 N.M. 827, 70 P.3d 1266. We weigh three factors under the *Mathews* test: (1) the parent's interest, (2) the risk to the parent of an erroneous deprivation in light of the probable value of additional or substitute procedures as safeguards, and (3) the government's interest. *Browind C.*, 2007-NMCA-023, ¶ 31. "Parents' interest in maintaining a parental relationship with [their] children is a fundamental right that merits strong protection." *Pamela A.G.*, 2006-NMSC-019, ¶ 13 (alteration in original) (internal quotation marks and citation omitted). "The government's interest in protecting the welfare of children is equally significant." *Id.* We thus focus on the second prong and compare the risk to the parent of erroneous deprivation of rights with the potential burden to the state associated with additional procedures.

{14} Here, the risk to Father of erroneously depriving him of his rights is high. As we explained above, the procedure followed by the court prevented Father from presenting a defense to the new charge of abuse. Father was not given adequate notice of the new charge nor was he given the opportunity "to be heard at a meaningful time and in a meaningful manner." *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 26, 136 N.M. 53, 94 P.3d 796 (internal quotation marks and citation omitted). Father "did not have a fair opportunity to defend" against the claim of abuse, nor was he allowed to "offer[] additional evidence on the new theory." *Bellet*, 114 N.M. at 692, 845 P.2d at 786. Denial of notice and the opportunity to be heard is especially prejudicial in light of the

relationship between the adjudicatory findings and any proceedings related to the termination of Father's parental rights. We agree with Father that he was "blind-sided" by the amended petition "sprung on him" at the end of the proceedings.

**{15}** By contrast, the burden on the state to provide additional procedural safeguards—i.e., "proceed[ing] to hear and determine the additional or other issues" and allowing Father to mount a defense to the charge of abuse—is minor. The district court spent parts of one afternoon and the next morning adjudicating the case against Father. According to CYFD, all of the facts that supported the court's findings were readily discoverable before the hearing and the evidence supporting neglect was equally relevant to a claim of abuse. Therefore, there was nothing to prevent CYFD from moving to amend its petition before the hearing. And once the motion was granted at the end of the hearing, the court could have extended the proceedings to allow Father to present his defense to the added charge, or if time presented a problem, the court could have adjudicated the neglect issue and set the abuse issue for another day. None of these options place a significant burden on CYFD or the district court.

**{16}** We also observe that whether Father was afforded due process is not dependent on whether he would have prevailed had he been given adequate notice; rather, Father need only show "that there is a reasonable likelihood that the outcome *might* have been different." *Maria C.*, 2004-NMCA-083, ¶ 37. Because Father was not aware that he was facing allegations of abuse, he had not investigated or prepared a defense in this regard. His evaluation of the evidence presented was in relation to the neglect and abandonment issues, not to abuse. His strategy regarding objections might have been different had he known that he needed to defend against claims of abuse. Accordingly, we conclude that there is a reasonable likelihood that the outcome might have been different had notice been given. Applying the *Mathews* test to the circumstances of this case, we conclude that Father's due process rights were violated by the amendment procedure.

**CONCLUSION**

**{17}** For the foregoing reasons, we reverse the adjudication of child abuse against Father. As we have explained, the adjudication as to neglect was not appealed and the disposition of the case based on neglect was proper. We remand for any proceedings the court may want to take with regard to the disposition now that the determination as to abuse has been reversed.

**{18}   IT IS SO ORDERED.**

---

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

7

**JONATHAN B. SUTIN, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for *State of NM ex rel CYFD v. Steve C.*, Docket No. 31,311**

| | |
|---|---|
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-AM | Amendments to Pleadings |
| CA-NO | Notice |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |