This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37840**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

       Petitioner-Appellee,

v.

**AMIE W.,**

       Respondent-Appellant,

**IN THE MATTER OF DEVIN W.,**

       Child.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY
James M. Hudson, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

JulieAnne Hufstedler Leonard, PC
JulieAnne Hufstedler Leonard
Capitan, NM

Guardian Ad Litem

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Amie W. (Mother) appeals the judgment terminating her parental rights to Devin W. (Child), born May 12, 2010. Mother argues that the Children, Youth and Families Department (CYFD or the Department) (1) failed to make reasonable efforts to reunify the family and failed to consider guardianship instead of termination; and (2) failed to show by clear and convincing evidence that Mother would not ameliorate the causes and conditions of neglect within the foreseeable future. We affirm the judgment of the district court.

**{2}** We set out only the pertinent facts and law in connection with the issues analyzed because the parties are familiar with the facts and procedural posture of this case.

**Background**

**{3}** Mother is the mother of Child and his brother, Trevor P., born September 25, 2005 (collectively, Children). Child's father is Jeremiah D. (Father), and Trevor's father is Jody P. Belle Joy P. is Trevor's paternal grandmother, and Jody P. is Trevor's paternal grandfather, and they served as foster parents (Fictive Kin Foster Parents) for Child and Trevor beginning on September 5, 2017. Micah, Trevor's half-sister by a different mother, also lives with Fictive Kin Foster Parents though, she is not part of these proceedings.

**{4}** The following facts surrounding Child and Trevor's placement in CYFD's custody are contained in the affidavit for ex parte custody order. On June 22, 24, and 29, 2017, CYFD received reports of physical neglect and abuse by Mother. Mother is a long-term drug user who becomes "angry and irritable" when she "comes down." Trevor reported that he has found needles on the floor that have been left behind by various individuals who are in and out of the house. Child, who appeared to be shy and hesitant to answer questions, also said that he has found needles in the home. Trevor said that Mother has slapped him and "beat on him and has yelled at him." Child and Trevor often don't have food and have "bounced around between grandma, uncle, aunt, and mom." On June 29, 2017, law enforcement placed Child and Trevor in the Department's legal custody.

**{5}** The district court entered a stipulated judgment and disposition on August 29, 2019, adjudicating Children neglected pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2017, amended 2018). The court granted CYFD legal custody of Child and Trevor for up to two years, subject to judicial review. The stipulated judgment ordered Mother to participate in a treatment plan that required her, among other things, to participate in a psychological evaluation and follow recommendations; participate in a drug and alcohol assessment and follow recommendations; participate in random drug screens;

participate in outpatient substance abuse counseling; participate in an inpatient substance abuse program if the outpatient program was not successful; participate in a psychiatric evaluation to assess for medications; participate in scheduled visitations with Children; and maintain safe and stable housing.

**{6}** On June 12, 2018, the district court held an initial permanency hearing, at which Mother was not present because she was allegedly being admitted into an inpatient substance abuse program. At the hearing, CYFD recommended a permanency plan of adoption for Child and permanent guardianship for Trevor with Fictive Kin Foster Parents. CYFD recommended adoption for Child because neither Mother nor Father had complied with their court-ordered treatment plans, and Father wanted to relinquish his parental rights to Child because he believed Child was "in the best place." On the other hand, CYFD recommended a permanent guardianship for Trevor because Trevor's father, although incarcerated, was compliant with his treatment plan and had a relationship with his son. Mother objected to the change of plan from reunification to termination; however, the district court adopted the plans proposed by CYFD.

**{7}** Father relinquished his parental rights to Child in September 2018, and the hearing on the motion for termination of parental rights (TPR hearing) as to Mother took place on October 2, 2018. Four witnesses testified, including Mother, who was not present in court but testified by telephone because she was—again—supposedly checking into a rehabilitation facility. Their testimony is summarized as follows.

**{8}** Joe Vandermeen testified that he performed a drug screen on Mother and Child in June 2017, and both of them tested positive for methamphetamine. Mother's treatment plan stated that all "no shows" for random drug screens would be considered positive; nevertheless, she subsequently did not show up for testing on two separate dates. Her most recent drug screen, performed in May 2018, tested positive.

**{9}** Irene Chavez Gonzales, the primary Department investigator, testified about Mother's history, including her mental health and drug abuse. She discussed the prior, substantiated report on Mother in May 2016 when CYFD offered services for substance abuse and mental health and that Mother did not follow through with referrals made at the time. Further, she testified that Children were not consistently in Mother's care, there were numerous reports of there not being enough food in the home, and that Children love their Mother but did not feel safe around her.

**{10}** Jennifer Lewis, a permanency planning worker with the Department testified next and relayed what Mother told her. Mother acknowledged that she was bipolar and had ADHD, believed that she was addicted to Xanax, and admitted that she was using methamphetamines and was around people using that drug. Lewis created a case plan for Mother containing services that Mother requested as well as substance abuse treatment. Although CYFD initially scheduled visits for Mother and Children at the Department, those visits did not go well and required intervention because Mother placed substantial blame on Children, especially Trevor, for why they were in custody. As a result, CYFD referred Mother to visits at the CASA office where greater

supervision could be provided. CYFD invited Mother to attend monthly events for families with children in custody, but Mother participated in only one event. In-person visits between Mother and Children were eventually stopped in March 2018 because Mother was often late, failed to show up, or behaved inappropriately when she did. Mother has not seen Children since early May 2018.

{11}   The treatment plan required Mother to participate in family therapy but she needed to first become compliant with mental health recommendations which she was unable to do and, therefore, family therapy never started. Mother was also referred to parenting classes at Casa and at La Familia Mental Health. Although Mother attended two parenting classes at Casa, she did not follow through or complete the program. Similarly, Mother attended one parenting group at La Familia Mental Health but did not participate in any additional sessions.

{12}   Mother was admitted to The Peak Psychiatric Hospital for eight days in August 2017 and participated in a substance abuse assessment while there. Upon her discharge, Mother was referred for medication management and mental health services. Mother initially went to her appointments for medication management but gradually stopped going and later admitted that she was self-medicating with leftover medications that were not prescribed. She never followed up on the mental health referral.

{13}   As noted, the treatment plan required Mother to participate in substance abuse treatment, either outpatient or inpatient if outpatient was ineffective. The Peak referred Mother to La Familia Mental Health for drug and alcohol assessment and outpatient substance abuse treatment. Mother did participate in a few group counseling sessions; however, she did not participate in services or demonstrate any progress in developing her coping skills. Further, Mother failed to participate in a chemical dependency detoxification program which she was required to go through before entering an inpatient treatment program, she asked to go to a Metropolitan Assessment and Treatment Services (MATS) program but did not go, and did not show for her intake at New Mexico Rehabilitation.

{14}   In addition to failing to participate in any of the above programs, Mother was referred—and scheduled—for a psychological evaluation but arrived late and missed her appointment. Mother did not reschedule the evaluation.

{15}   Mother did not comply with the treatment plan's requirement that she have safe and stable housing. Although she initially had a home address, Mother did not remain there, and Lewis was never able to go to Mother's residence to conduct an evaluation. Mother did not have consistent contact with Lewis or CYFD, and Mother did not comply with any aspect of her treatment plan.

{16}   Lewis testified that CYFD considered Child's placement with Fictive Kin Foster Parents to be a relative placement. Child and Trevor have a strong sibling bond, and it is important that they stay together. According to Lewis, it was in Trevor's best interest to have a permanent guardianship with Fictive Kin Foster Parents instead of adoption

because he has a relationship and bond with his father who would soon be released from incarceration and may be able to demonstrate his ability to parent. Child's Father, on the other hand, stated from the beginning of the case that he wanted to relinquish his parental rights to Child. And Mother was not compliant with her case plan and would not be compliant in the near future; therefore, Lewis testified, adoption was in Child's best interests.

**{17}**   Mother, who testified by telephone, said she was in the emergency room of Eastern New Mexico Medical Center in order to check into Sunrise for medication management and to get into a rehabilitation center more quickly. She said that this time was different from past times when she would begin and not complete certain programs and this time that she had resolved to accept responsibility for her problems and care for Children.

**{18}**   Mother testified that her problems started with the deaths of family and friends and a lack of support from her family. She also said that Child was not in her custody when he tested positive for drugs; that Child never had anything negative to say; she believed Trevor's allegations were blown out of proportion; that she wasted a lot of time trying to prove her innocence; she is a good mother who has made some mistakes, but she knows where her faults lie and what she needs to do to fix them, and she wanted one more chance.

**{19}**   Mother did not believe she was getting the proper medication and wanted a second opinion. She testified that she was working on getting her housing situation in order, she was going back to school, and had the parts for her car that had broken down. Mother acknowledged that she needed a lot of counseling but disputed the results of the drug test, complained about difficulties with her case manager, and claimed she had achieved more than she was credited with. Specifically, Mother stated that she only had three or four parenting classes left, had performed her drug screen and psychological evaluation, saw her therapist, and that Children never had to wait for her on visits. When she was late, Mother claimed that she was never more than five to seven minutes late, but when she was late, CYFD would nonetheless cancel the visits.

**{20}**   On October 16, 2019, the district court issued detailed findings of fact and conclusions of law supporting its decision to grant CYFD's motion for termination of Mother's parental rights as to Child pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005). The court thereafter entered judgment on the matter. This appeal followed.

## Discussion

**{21}**   On appeal, Mother makes two arguments. First, Mother contends that CYFD failed to make reasonable efforts to reunify the family and failed to explore sufficiently the alternative of permanent guardianship for Child. Second, Mother contends CYFD failed to show by clear and convincing evidence that Mother was unlikely to ameliorate the causes and conditions of neglect within the foreseeable future. We address each argument in turn.

**Standard of Review**

**{22}** The standard of proof for termination of parental rights is clear and convincing evidence. *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "Clear and convincing evidence is defined as evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, a fact[-]finder could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Thus, when reviewing the district court's determination that the causes and conditions of neglect were unlikely to change in the foreseeable future, we ask "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859. To the extent we must interpret or apply the statutes at issue in this case, our review is de novo. *State ex rel. Children, Youth & Families Dep't v. Steve C.*, 2012-NMCA-045, ¶ 8, 277 P.3d 484.

**CYFD Made Reasonable Efforts to Assist Mother and Was Not Required to Consider Guardianship Prior to Pursuing Termination of Her Parental Rights**

**{23}** Mother contends that CYFD failed to engage in "reasonable efforts" to assist her in adjusting the conditions that rendered her unable to properly care for Child, it "did not do enough to reunify the family," and it "acted precipitously to choose termination and adoption over permanent guardianship[.]"

**{24}** As a preliminary matter, we note that Mother provides no facts and makes no argument in support of her contention that CYFD "did not exert reasonable efforts to assist her to ameliorate the causes and conditions of neglect." Instead, she focuses her argument solely on the district court's failure to consider less drastic alternatives to termination of parental rights. We nevertheless briefly address the issue of "reasonable efforts" out of an abundance of caution because Mother also raises "reasonable efforts" in her second argument, although she again does so with no discussion.

**{25}** Section 32A-4-28(B)(2) provides that the district court shall terminate parental rights to a neglected or abused child when

> the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the [D]epartment or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

As this Court has noted, "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Patricia H.*, 2002-NMCA-061, ¶ 23.

{26}	Here, CYFD made numerous efforts to assist Mother in addressing the causes and conditions of her neglect of Children. For example, the testimony established that Lewis created a case plan and referred Mother to individual counseling; Mother was scheduled for a psychological evaluation; she was referred for medication management; and efforts were made to assist Mother with her drug addiction. In addition, CYFD referred Mother to parenting classes, offered visits with Children at CYFD and at the CASA office, and invited Mother to participate in family therapy. Based on the evidence, we cannot say that "[t]he ultimate failure to reach the goal of reunification or placement with relatives was not due to [CYFD's] lack of efforts." *State ex rel. Children, Youth & Families Dep't v. William M.*, 2007-NMCA-055, ¶ 70, 141 N.M. 765, 161 P.3d 262. Rather, it was Mother's inability to work the treatment plan that made reunification with Child impossible. While Mother made some efforts to engage in treatment, her compliance with the plan and recommendations were minimal at best, and she made no progress toward alleviating the causes and conditions that brought Child into custody. Therefore, we hold there was clear and convincing evidence to support the district court's finding and conclusion that CYFD satisfied the requirement of reasonable efforts to assist Mother in adjusting the conditions that render her unable to properly care for Child.

{27}	Mother further argues that, as it did with Trevor, CYFD should have "advocate[ed] for permanent guardianship [with Fictive Kin Foster Parents], rather than moving to terminate parental rights." For the reasons that follow, we disagree with Mother that this approach should have been CYFD's "default position."

{28}	During the TPR hearing, Lewis testified in detail about the Department's decision to pursue termination of parental rights as to Child and a permanent guardianship for Trevor. Lewis stated that it is in Trevor's best interests to have a permanent guardianship with Fictive Kin Foster Parents because he has a relationship and a bond with his father. Although Trevor's father was incarcerated, the father was compliant with his case plan, which included participating in programs at the correctional facility. Moreover, CYFD did not want to terminate the parental rights of Trevor's father because he was going to be released from incarceration soon and might be able to demonstrate his ability to parent when he is released. On the other hand, Child's Father stated early in the case that he wanted to relinquish his parental rights to Child. Given that neither Mother nor Child's Father was compliant with their case plan and would not be compliant in the foreseeable future, adoption was in Child's best interests.

{29}	Mother has pointed to nothing in the statute requiring the district court to consider guardianship before terminating parental rights. Indeed, nothing in Section 32A-4-28(B)(2) requires a court to consider guardianship as an alternative to termination. Here, the district court considered the permanency plan options and ultimately found

that Mother had "failed to meet the treatment plan requirements necessary to address both the conditions that brought . . . Children into custody and the safety concerns identified" and that there was "no basis to expect that she will do so in the foreseeable future." Further, the court found that "[b]ased on a consideration of the best interests of . . . Children, the parental rights of [Mother] over [Child] must be terminated." We conclude that the district court was not required to find that guardianship was not in Child's best interests before terminating Mother's parental rights to him.

{30}    We are unpersuaded by Mother's reliance on case law from Colorado and California. Neither *People in Interest of M.M.*, 726 P.2d 1108 (Colo. 1986), nor *In re Jack H.*, 165 Cal. Rptr. 646 (Cal. Ct. App. 1980), support Mother's position on appeal. While both stand for the proposition that termination is a "drastic remedy," neither case requires a district court to consider guardianship before terminating parental rights. Here, CYFD proved by clear and convincing evidence that Child has been neglected, that the conditions and causes of the neglect are unlikely to change in the foreseeable future despite reasonable efforts by CYFD, and that termination is in the best interest of Child. Mother implies that it is "quite simply bizarre" that CYFD recommended differed permanency plans for Child and Trevor; however, she does not point to any law requiring CYFD to recommend—or the district court to implement—the same permanency plan for related children in the Department's custody. And, here, there was ample evidence at the trial to support the different permanency plans for Child and Trevor. Therefore, we will not disturb the district court's judgment on appeal.

**The Evidence Established by Clear and Convincing Evidence That Mother Was Unlikely to Ameliorate the Causes and Conditions of Neglect Within the Foreseeable Future**

{31}    Mother argues that her "desire to parent Child, and her willingness to cooperate with [CYFD's] treatment program as best she could, all weigh heavily against the assertion that the causes and conditions of the neglect were unlikely to change in the near future." We understand Mother's argument to be that because she acknowledged her failings and admitted that she had let Children down, and because she had self-admitted to the hospital on the day of the TPR hearing, she demonstrated that she was likely to change the causes and conditions of her neglect of Child in the foreseeable future. We disagree.

{32}    Given our conclusion above that CYFD met the reasonable efforts requirement, we address only whether the conditions and causes of Child's neglect were unlikely to change in the foreseeable future. Our courts have interpreted the term "foreseeable future" to refer to corrective change within "a reasonably definite time or within the near future." *Patricia H.*, 2002-NMCA-061, ¶ 34 (internal quotation marks and citation omitted).

{33}    Testimony at the TPR hearing established that at the time the hearing was held, Mother was not engaged in services, had not made any progress in addressing her substance abuse or mental health issues, was not under the care of any medical

providers, had not seen Child in over four months, and did not demonstrate any improvement in her parenting skills when she did attend visits with Children. Moreover, the district court found, inter alia, that Child's needs were not being met, Mother failed to meet the treatment plan requirements relating to contact, visitation and establishing a bond with Children, failed to follow up on the referrals and care arranged by CYFD, failed to go through detox so that she could be admitted to a rehabilitation center, failed to establish safe and stable housing, and refused to tell CYFD where she was living.

**{34}** To the extent Mother continues to argue that her own testimony established that the causes and conditions of the neglect were likely to change in the near future, the district court, as the finder of fact, was free to reject Mother's representations that she was working on securing transportation, going back to school, and had an offer of employment. Indeed, sufficient evidence supported the district court's finding that Mother's decision not to appear at the TPR hearing "was a calculated decision on her part to delay the proceedings," she always had "some excuse" or "blame[d] others for her own failure to follow through [on] visits [with Children,]" she made up an excuse for failing to go to detox, her conduct was "oppositional and defiant," and she "engaged in a pattern of conduct reflecting a refusal to take responsibility for her actions." In sum, this Court will "not reweigh the evidence or substitute our judgment for that of the [district] court on factual matters or on matters of credibility." *William M.*, 2007-NMCA-055, ¶ 59. Considering the totality of the circumstances, we conclude there was substantial evidence for the district court to find that the causes and conditions of Child's neglect were unlikely to change in the foreseeable future despite reasonable efforts by CYFD.

## Conclusion

**{35}** For the foregoing reasons, we affirm.

**{36}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**LINDA M. VANZI, Judge**