This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38337**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**CRYSTAL V.,**

Respondent-Appellant,

and

**DUSTIN T.,**

Respondent,

**IN THE MATTER OF TOBY M.
and COLBY M.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Bradford Dalley, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Richard J. Austin
Farmington, NM

Guardian Ad Litem

**DECISION**

**VARGAS, Judge**.

**{1}** Crystal V. (Mother) appeals the district court's termination of her parental rights to T.M. and C.M. (collectively, Children). Mother contends that Children, Youth and Families Department (the Department) failed to make reasonable efforts to assist Mother in addressing the causes and conditions that brought Children into the Department's custody. Mother further contends that the district court misapprehended the Children's Code's and as a result, prematurely terminated Mother's parental rights in Children. We affirm the district court's judgment terminating Mother's parental rights in Children.[1] *See In re Court of Appeals Caseload*, Misc. Order No. 01-57, ¶ 4(C) (Sept. 19, 2016). We address Mother's arguments in turn.

**DISCUSSION**

**I.      Clear and Convincing Evidence Supports the District Court's Judgment Terminating Mother's Parental Rights in Children**

**{2}** The Department filed a motion to terminate Mother's parental rights pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005), which states in pertinent part:

> The court shall terminate parental rights . . . when . . . the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the [district] court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by the department or other appropriate agency to assist the parent in adjusting the conditions that render the parent unable to properly care of the child.

**{3}** The Department bears the burden "to prove [these] grounds for termination by clear and convincing evidence." *State ex rel. Children, Youth & Families Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 13, 126 N.M. 664, 974 P.2d 158. Clear and convincing

---

1 We remind Mother that litigants are required to present all evidence, whether supportive or contrary to the district court's judgment. Where a party fails to do so, this Court has the discretion to decline to consider that party's substantial evidence argument. *See* Rule 12-318(A)(3) NMRA ("A contention that a . . . judgment . . . is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition[.]); *see also State ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, No. A-1-CA-36925, mem. op. ¶ 28 (N.M. Ct. App. June 9, 2020) (stating that where an appellant does not properly attack a district court's finding, they are bound by those findings where the letter or spirit of the Rules of Appellate Procedure require that an appellant properly set forth all the evidence bearing upon the findings).

evidence is evidence that "must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 2, 120 N.M. 463, 902 P.2d 1066 (internal quotation marks and citation omitted). Despite this stringent standard, "this Court will not reweigh the evidence on appeal." *State ex rel. Children, Youth & Families Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. "The function of the appellate court is to view the evidence in the light most favorable to the prevailing party, and to determine therefrom if the mind of the fact[-]finder could properly have reached an abiding conviction as to the truth of the fact or facts found." *State ex rel. Children Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 12, 130 N.M. 781, 32 P.3d 790 (internal quotation marks and citation omitted). Thus, the question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Children, Youth & Families Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859.

## A. The Department Made Reasonable Efforts to Assist Mother in Alleviating the Causes and Conditions That Brought Children Into the Department's Custody

{4}     Mother contends that the district court's judgment must be reversed because the Department failed to make reasonable efforts to assist her in addressing the causes and conditions of neglect by not giving her a chance to fully participate in inpatient treatment. Specifically, Mother claims the Department failed when it did not immediately enroll her at the onset of the case in a long-term inpatient treatment program and deprived her of adequate time to participate in long-term inpatient treatment, which she proposed to do at the time of the termination trial. Mother also asserts that the Department's efforts fell short because Mother was "given no psychiatrist treatment whatsoever" after being diagnosed with major depressive disorder.

{5}     The Department has an obligation to provide services targeted at addressing the causes and conditions of Mother's neglect of Children. *See State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 22, 139 N.M. 137, 130 P.3d 198 (noting that "a plan must correct, eliminate, or ameliorate' the condition on which the adjudication is based"); *see also* NMSA 1978, § 32A-4-21(A), (B)(10) (2016) (requiring the department to provide a "predisposition study and report" to the district court which includes "a case plan that sets forth . . . services to be provided to the child and the child's parents to facilitate permanent placement of the child in the parent's home"). The reasonableness of the Department's efforts depends on the totality of the circumstances, which may include "the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Children, Youth & Families Dep't. v. Keon H.*, 2018-NMSC-033, ¶ 41, 421 P.3d 314 (internal quotation marks and citation omitted). Because a parent does not completely cooperate, comply, or participate in the services provided or arranged by the Department, does not render the Department's efforts unreasonable.

*See Patricia H.*, 2002-NMCA-061, ¶ 23 (explaining that "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent"). "Both the Department and [parent] are responsible for making efforts toward reunification of the family." *Keon H.*, 2018-NMSC-033, ¶ 48. "[O]ur job is not to determine whether [the Department] did everything possible; our task is limited by our statutory scope of review to whether [the Department] complied with the minimum required by law." *Patricia H.*, 2002-NMCA-061, ¶ 28.

**{6}**     The Department filed a petition alleging that Mother had abused and neglected Children. Mother voluntarily entered into a no contest plea and judgment providing that Mother neglected Children pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2018). The factual basis for the plea was Mother's "[s]ubstance abuse issues and instability made [her] unable to properly care for her Children properly." Mother was ordered by the district court to comply with a treatment plan which required her to participate in random urinalysis (UA) screening and/or hair analysis and sign release forms; participate in substance abuse assessment, follow recommendations and sign release forms; participate in mental health assessment and follow all recommendations and sign release forms; participate in DV assessment and follow all recommendations and sign release forms; maintain safe and stable housing; maintain weekly contact by phone or face-to-face to keep the Department updated on progress/barriers of case plan progress; participate in parenting classes, demonstrate appropriate parenting skills and provide completion certificate to the Department; participate in and complete a bio-parent orientation by the Department and provide certificate of completion to the Department; participate in scheduled visitations a minimum of one-time weekly with Children; obtain and maintain income or employment to meet family needs; and provide all relative information, names, addresses, and phone numbers for possible relative placement.

**{7}**     The Department's obligations were to refer Mother for UAs; refer her for substance abuse, mental health and DV assessments, obtain any reports, and arrange for other services as needed; refer Mother to low income housing, and assist with shelter applications; document Mother's case plan progress and arrange for other services as needed; refer Mother to parenting classes and obtain certificate of completion; provide Mother with the Department's bio-parent orientation information and document her completion; monitor and document Mother's employment; and contact relatives and complete home studies for relative placement.

**{8}**     At the termination of parental rights trial, the following testimony was presented. Shawna Benally, the Department's permanency planning worker assigned to this case, testified that she made reasonable efforts to implement the treatment plan by communicating with Mother regarding her case plan and encouraging her compliance with the plan; referring Mother for substance abuse and mental health services including inpatient treatment; working with Mother to identify relative placement options; providing bus passes and actual rides for Mother to visitations, UAs, and other appointments; facilitating visitations including providing Mother rides to and from visits on at least

fifteen occasions; helping Mother with housing applications; and attempting multiple home visits.

**{9}** Ms. Benally expressed the difficulty in assessing Mother's living situation as Mother moved at least five times during this case. She further testified that even when she knew where Mother was residing, she was only permitted to enter Mother's residence twice out of ten attempts. She found one home unsuitable as a placement option for Children as it was unsanitary, with dog feces and urine inside, and the multiple adults living there would require background checks before the home could be considered a placement option.

**{10}** Mother informed Ms. Benally that she had completed intakes at Family Crisis Center for domestic violence, as well as substance abuse and mental health assessments at Cottonwood. Because Mother only completed an intake at Family Crisis Center and did not complete an assessment, Ms. Benally could not provide Mother with a referral for domestic violence services. Ms. Benally stated she called and texted Mother on multiple occasions to encourage her to complete her application for long-term inpatient treatment. She also helped Mother by arranging for her to be on a UA calendar at Cottonwood and ensuring Mother understood how to successfully comply with the UA process.

**{11}** Sylvia Marquez, a licensed alcohol and drug abuse counselor at Cottonwood provided testimony describing the assistance Mother received to address her substance abuse issues. She explained that Cottonwood is a substance abuse and clinical services treatment center. Ms. Marquez was also qualified as an expert in substance abuse treatment and diagnosis. She testified that she reviewed the substance abuse and mental health assessment Mother completed in May 2018. She explained that the review of the assessment was essential because it guides the treatment plan. She also testified that based on Mother's statements in her assessment, she had been clean since October 2017. Mother's assessment also revealed she had been in a domestically violent relationship, had post-traumatic stress disorder, major depressive disorder, stimulant use disorder, and cannabis use disorder. In order to address these issues, Mother was referred to a co-occurring group at Cottonwood. Ms. Marquez explained that this group treated people like Mother who have both substance abuse and mental health diagnoses. To assist Mother with attending treatment, Ms. Marquez also set Mother up with multiple Medicaid transports.

**{12}** Ms. Marquez further testified that Mother's treatment plan changed once Cottonwood learned that Mother had lied on her substance abuse assessment about being clean and she subsequently tested positive for methamphetamine, alcohol, and cannabis. Mother's new treatment plan consisted of intensive outpatient therapy (IOP) and a residential thirty-day inpatient treatment at Four Winds. Mother successfully completed the inpatient program. Ms. Marquez testified that while Mother did well for a couple of months and completed thirty-five of forty-eight IOPs for her aftercare, Mother was unsuccessfully discharged from Cottonwood after testing positive again for methamphetamine in January 2019 and ceasing to participate in treatment. Ms.

Marquez addressed Mother's relapse by recommending Mother participate in a ninety-day inpatient stay, to which Mother was resistant. Within a week of this recommendation, Mother stopped communicating with Ms. Marquez and coming to Cottonwood altogether. Even though Mother was discharged from Cottonwood, Ms. Marquez stated Mother would be welcomed back, and that she had discussed how to re-engage Mother in services with the Department. Ms. Marquez testified that Mother had not successfully completed any program at Cottonwood and that her prognosis for recovery was poor unless she completed a ninety-day inpatient stay followed by months of successful aftercare.

**{13}** Mother's testimony confirmed she had not completed much of her treatment plan. Mother admitted that she had not done the domestic violence assessment, had not begun parenting classes, did not obtain financial support, had not been consistent with visitation, and did not complete her post-inpatient substance abuse counseling. While Mother could not recall when she last submitted a UA, Ms. Marquez testified that Mother submitted to only half of her required UAs. Testimony from Ms. Benally also revealed that while Mother initially communicated with the Department, this communication drastically fell off in February 2019. While Mother had not re-enrolled in services at Cottonwood as of the date of the trial, she informed the district court that she had made an appointment for April 18, 2019, to work on the ninety-day inpatient application, but had cancelled this appointment and rescheduled it based on Ms. Marquez' earliest availability, which was after the TPR trial.

**{14}** Mother admitted that at the time of the TPR trial, she had not visited Children in over a month. Ms. Benally testified that Mother did attend thirty-two of forty-two visits; however, she had not made any of her visits since the end of February 2019. Mother not only blamed others for her inability to make her visits, but also deflected her responsibilities to comply with the treatment plan. She blamed many of her failures on a lack of transportation, and made much of the fact that she had been missing her identification documents, which she claims made it impossible to get Medicaid services, prescriptions, and employment. However, Mother conceded that she did not inform the Department that she was missing any of these documents, and the record indicates that the Department was unaware of this issue until January 2019, just three months before the TPR trial.

**{15}** In light of Mother's "transience, failure to communicate, and lack of cooperation" during the pendency of the proceedings, we conclude that the Department's efforts were sufficient. *Tammy S.*, 1999-NMCA-009, ¶ 15. Mother admitted at the hearing that she had still been using methamphetamine "occasionally." Mother had lied to Ms. Marquez about her relapse after Four Winds, even when confronted with positive UA results. The majority of UAs Mother submitted were positive for drug use. The district court found that the Department and Cottonwood tried to make reasonable efforts, but that these efforts were hindered by Mother's deception about her earlier relapses causing time to pass where no positive progress was made. Notably, the district court did not find Mother's testimony regarding the Department's efforts credible. The district court concluded that further reasonable efforts made by the Department to reunify

Children with Mother would be futile "unless and until . . .Mother addresses her substance abuse issues in a meaningful way." *See* § 32A-4-28(B)(2) ("The court may find in some cases that efforts by the department or another agency are unnecessary when there is a clear showing that the efforts would be futile[.]").

**{16}** Mother's minimal compliance and significant lack of progress in addressing the reasons why Children came into the Department's custody, primarily substance abuse and lack of stability, prevented the return of Children to her custody. The district court recognized its responsibility to give "primary consideration to [Children's] physical, mental and emotional welfare and needs" in terminating Mother's parental rights. Section 32A-4-28(A); NMSA 1978, § 32A-1-3(A) (2009). The cumulative effect of the district court's findings promote Children's physical, mental and emotional welfare and needs by the termination of Mother's parental rights. *See* § 32A-1-3 (A).

**{17}** Waiting for Mother to comply and make progress on her treatment plan places Children "in a legal holding pattern" forcing them "to wait for the uncertain possibility that the natural parents, despite their persistent and long-standing disregard of [C]hildren's interests, *may* remedy past faults which have rendered [C]hildren neglected." *In re Reuben & Elizabeth O.*, 1986-NMCA-031, ¶ 36, 104 N.M. 644, 725 P.2d 844 (emphasis added). The Department complied with its obligations pursuant to the treatment plan.

**{18}** Based on the foregoing evidence, we hold that there is substantial evidence to support the district court's conclusion that the Department's efforts to assist Mother in addressing the causes and conditions that brought Children into the Department's custody were reasonable *See Patricia H.*, 2002-NMCA-061, ¶ 27 ("[The Department] is only required to make reasonable efforts not efforts subject to conditions unilaterally imposed by the parent."); *id.* ¶ 31 (holding that the parent's level of cooperation and recalcitrance of the problems that render a parent unable to provide adequate parenting bear on the reasonableness of the department's efforts); *Keon H.*, 2018-NMSC-033, ¶ 48 (holding that the parent, along with the department, is responsible for making efforts toward reunification). We now turn to Mother's second issue.

## II.      The District Court Did Not Err When It Denied Mother Additional Time to Work Her Treatment Plan

**{19}** Mother claims that the district court erred by terminating her parental rights prematurely. She argues "that the district court misapplied New Mexico law when it found that [Mother's] parental rights should be terminated because Children had been in [the Department's] custody for twelve months since the adjudication." We conclude that the district court appropriately proceeded with the TPR trial.

**{20}** The Department asserts that this argument was not preserved as nothing in Mother's "motion to continue the TPR trial" contained claims that the Department was violating state or federal law. We do not find anything in the record indicating Mother claimed specific violations of state or federal law; however, it is clear that Mother asserted that she should be given additional time to complete her treatment plan albeit

at the beginning of the TPR trial. Assuming without deciding that Mother sufficiently preserved her argument, we conclude there was no error with the timeline in this case, considering Mother's marked lack of progress in addressing the causes and conditions that brought Children into the Department's custody.

**{21}** We review the district court's interpretation and application of rules and statutes de novo. *State ex. rel. Children, Youth & Families Dep't v. Steve C.*, 2012-NMCA-045, 8, 277 P.3d 484. Mother relies on NMSA 1978, Section 32A-4-29(G) (2009), for the proposition that the Department should not have moved to terminate her rights earlier than fifteen months from Children's placement in foster care. Section 32A-4-29(G). We find Mother's reliance on Section 32A-4-29(G) misplaced. Section 32A-4-29(G) states, "When a child has been in foster care for not less than fifteen of the previous twenty-two months, the [D]epartment shall file a motion to terminate parental rights[.]" This section *mandates*, barring any exceptions, that the Department move to terminate parental rights after a child has been in foster care for fifteen of the last twenty-two months. It does not, as Mother argues, *prohibit* the Department from moving to terminate sooner. *See* § 32A-4-29(A) (providing that a TPR motion "*may* be filed at any stage of the abuse or neglect proceeding by a party to the proceeding" (emphasis added)). Although Mother seems to suggest that an exception may apply because Children were not in an adoptive placement, this exception only applies where the permanency plan of adoption would not be "an appropriate plan for the child." Section 32A-4-29(G)(8). Mother does not argue the exception, nor does she direct us to any evidence in the record to support this exception. Therefore, we conclude that the district court did not err in proceeding with the termination of parental rights trial where Children were in foster care for less than fifteen months.

**CONCLUSION**

**{22}** Based on the foregoing, we affirm the district court's judgment terminating Mother's parental rights to Children.

**{23}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**